UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gabriel PEREZ VELASQUEZ,<br><br>                                      Petitioner,<br><br>v.<br><br>Pamela J. BONDI, Attorney General of the United States, Department of Justice; Secretary of Homeland Security;  Todd LYONS, Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement;  Daniel A. BRIGHTMAN, Field Office Director of the San Diego Immigration and Customs Enforcement Office;  Jorge VELARDE, Assistant Field Office Director of the Immigration and Customs Enforcement, Otay Mesa Detention Center;  Christopher J. LAROSE, Senior Warden, Otay Mesa Detention Center;<br><br>                                      Respondents. | Case No.:  26-cv-01759-GPC-DDL<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Currently before the Court is Petitioner Gabriel Perez Valasquez's petition for a writ of habeas corpus. This is Petitioner's second petition before this Court. The Court granted the first petition in part and ordered Respondents to provide Petitioner with a bond hearing

under 8 U.S.C. § 1226(a). *See Velasquez v. Divver*, No. 26-CV-0593-GPC-JLB, 2026 WL 362083 (S.D. Cal. Feb. 9, 2026). Petitioner now argues that the bond hearing he received was legally and constitutionally inadequate. ECF No. 1, ¶ 5. For the reasons set forth below, the Court GRANTS the petition. Respondents are ORDERED to release Petitioner within forty-eight (48) hours subject to reasonable conditions of supervision.

## BACKGROUND

Petitioner is a 41-year-old Mexican national who has lived in the United States since 2001. ECF No. 1, ¶¶ 1-2. Petitioner works as a landscaper and has no criminal history. *Id.* ¶ 9. Petitioner lives with his longtime partner and their two-year-old daughter, who is a U.S. citizen. *Id.* ¶ 23. Petitioner also has three U.S. citizen children from a previous relationship with whom he maintains a strong relationship and for whom he provides child support. *Id.*

Two of Petitioner's children have significant medical needs. *Id*. His thirteen-year-old daughter has a diagnosis of misphonia, a chronic disorder related to brain functioning that results in decreased tolerance to specific sounds. *Id.* Due to her condition, she requires therapy and homeschooling. *Id.* Petitioner's youngest daughter, who is two-years-old, was born with an eye condition which required surgery. *Id.* She is also exhibiting developmental delays such as delayed speech, for which she has been referred to therapy. *Id.*; ECF No. 1-2, ¶ 7. Petitioner's partner has not worked since Petitioner's youngest daughter was born because she requires specialized attention and care. *Id.*

Petitioner was detained by immigration authorities on December 2, 2025, when he was on his way to work. *Id.* ¶ 1. He has been detained since and is currently at the Otay Mesa Detention Center. *Id.*

On January 29, 2026, Petitioner filed a petition for a writ of habeas corpus, noting that he was a member of the *Maldonado Bautista* bond eligible class, 813 F. Supp. 3d 1084, 1127 (C.D. Cal. 2025), and was therefore entitled to a bond hearing. ECF No. 1, ¶ 3. This Court granted the petition and ordered respondents to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a). *Id.*; *see also Velasquez*, 2026 WL 362083.

26-cv-01759-GPC-DDL

Petitioner was provided with a bond hearing on February 12, 2026. ECF No. 1, ¶ 4; ECF No. 5, at 1. At the hearing, Petitioner's attorney submitted 52 pages of evidence, including letters from family, Petitioner's children's doctor, and former employers. ECF No. 1, ¶¶ 4, 28.[1] Petitioner also provided a letter from his U.S. citizen sister who stated that she would ensure Petitioner's presence at future court dates and financially support Petitioner should he need it. *Id.* ¶ 28.

The hearing lasted approximately thirty minutes, during which—according to the notes and recollection of Petitioner's immigration court attorney—the immigration judge ("IJ") focused on Petitioner's driving without a license, failure to pay taxes, and reliance on public assistance. *Id.* ¶¶ 4, 30. Petitioner's counsel in this matter—who is a different attorney from the attorney representing Petitioner before the immigration court, ECF No. 1-2, ¶ 1—must rely on the immigration court counsel's recollections because neither attorney has been able to access a transcript or audio recording of the hearing. ECF No. 1, ¶¶ 4, 30; ECF No. 1-2, ¶ 14.

Following the hearing, the IJ issued an order stating that bond is "[d]enied, because deemed to be a flight risk, and no amount of bond will mitigate such risk. Court's reasoning and findings stated on the bond record." ECF No. 1-4, at 2. Petitioner's counsel avers that they have not been able to access any sort of "bond record" in this case. ECF No. 1-2, at 6.

---

[1] Petitioner's evidence included: "his birth certificate, all of his children's birth certificates, letters from [his children's] doctors, a notarized letter from his current partner and multiple family members, letters from his current and former employers, a sponsor letter from his U.S. citizen sister, who swore under penalty of perjury to provide for Mr. Perez Velasquez and ensure his presence at any future court dates or appointments, as well as his sister's most recent taxes and paystubs to prove she has the financial means to support her brother. The doctor's letters for his children indicated they were in need of ongoing care. His employer's letter indicated Mr. Perez Velasquez had over 5 years work history for HV Landscaping LLC, and knew the employer personally for between 10 and 13 years." ECF No. 1, ¶ 28 (internal citations omitted).

26-cv-01759-GPC-DDL

Petitioner now argues that his continued detention without an adequate bond hearing violates his Fifth Amendment due process rights. ECF No. 1, ¶ 5. Petitioner seeks an order granting Petitioner's release or, in the alternative, requiring the government to provide Petitioner with a constitutionally adequate bond hearing before a neutral arbiter. *Id.* at 18.

**DISCUSSION**

Respondents oppose Petitioner's petition solely on the grounds that Petition failed to exhaust his administrative remedies. *See* ECF No. 5. Respondents do not otherwise engage with the merits of Petitioner's arguments regarding the validity of Petitioner's initial bond hearing. *Id.*

The Court will first address the questions of jurisdiction and exhaustion. Then, it will consider if Petitioner's hearing comported with the law and due process.

**I.   Jurisdiction**

The Court recognizes that Respondents do not challenge the petition on the grounds that this Court lacks jurisdiction. However, the issue of jurisdiction has arisen in similar habeas petitions within this Circuit. *See*, *e.g.*, *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583 (W.D. Wash. Jan. 30, 2026); *Zaitsev v. Warden of Adelanto ICE Processing Center*, No. 2:26-CV-00454-SPG-AS, 2026 WL 391429, at *10 (C.D. Cal. Feb. 9, 2026); *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026); *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, --- F. Supp. 3d ---, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026). Thus, the Court will briefly address the issue.

"In general, the Court does not have jurisdiction to review discretionary bond decisions." *Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *3 (citing 8 U.S.C. § 1226(e)). However, while an IJ's discretionary judgment may not be judicially reviewed pursuant to 8 U.S.C. § 1226(e), district courts retain habeas jurisdiction over "constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). *See also Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1031 (W.D. Wash. 2019) ("Federal district courts have habeas jurisdiction to review bond hearing determinations for

26-cv-01759-GPC-DDL

constitutional claims and legal error."). Such jurisdiction extends to "mixed questions" involving application of law to facts. *N.A. v. Warden*, No. 5:25-cv-03007-CV-MBK, 2026 WL 734587, at *6 (C.D. Cal. Feb. 20, 2026), *report and recommendation adopted sub nom. N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-CV-MBK, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026) (citing *Martinez v. Clark*, 124 F. 4th 775, 783 (9th Cir. 2024)). Indeed, "claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Id.* (internal quotation marks and citation omitted). Because Petitioner argues that the process he was provided at his § 1226(a) bond hearing was legally and constitutionally deficient, this Court retains jurisdiction to review Petitioner's claims.

## II. Exhaustion

Habeas claims are generally accompanied by a prudential exhaustion requirement. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) ("The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims"). A district court may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

When a petitioner does not exhaust prudentially required administrative remedies, the district court "ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Id.* (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). However, a court may waive the prudential exhaustion requirement if: (1) "administrative remedies are inadequate or not efficacious"; (2) "pursuit of administrative remedies would be a futile gesture"; (3)

"irreparable injury will result"; or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

The Court need not determine whether the *Puga* factors weigh in favor of an exhaustion requirement in this case. This is because, even if exhaustion is required, Petitioner has successfully argued that multiple *Laing* factors apply such that waiver is warranted. Specifically, Petitioner argues that pursuit of administrative remedies would be futile and cause irreparable harm and hardship to Petitioner. ECF No. 6, at 3, 7.

As to futility, Petitioner points to evidence that BIA has been drastically reshaped within the past year, such that the BIA now functions to rubberstamp IJ bond denials and facilitate noncitizen removal.[2] ECF No. 1, ¶ 32; ECF No. 6, at 5-8. While such evidence, on its own, is insufficient to waive exhaustion, the statistics support the position that the reconstituted BIA is far less likely to provide Petitioner with any efficacious relief.[3]

---

[2] The following evidence is referenced in Petitioner's in briefs. *See* Ximena Bustillo and Rahul Mukherjee, *An immigration court few have heard of is quietly shaping policy behind the scene*, NPR (Mar. 20, 2026) https://www.npr.org/2026/03/20/nx-s1-5707535/trump-immigration-detentionappeals-board-deportation (detailing how (1) the BIA agreed with the Department of Homeland Security—and ruled against the immigrant—in 97% of cases in 2025, with incomplete data placing the number around 90% for 2026 and (2) the BIA—which was comprised of 26 members in annuary 2025 with a nearly even split between Democratic and Republican president appointees spanning from Bush to Biden—has been transformed to a 15-seat board where 13 of the 15 members were appointed by Trump); Jason A. Cade, *Welcome to the Trump Administration's Board of Immigration Appeals. The Immigrant Always Loses*. 136 Yale L.J. Forum __ (forthcoming 2026), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=6506380 (detailing how the reshaped BIA "foreordains" results for immigrant appellees); Jayashri Srikantiah & Rajan Lukose, Stanford White Paper: *The Board of Immigration Appeals Under the Second Trump Administration: An Empirical Analysis of Grant Rates and DHS Appellate Behavior* (March 23, 2026), https://law.stanford.edu/documents/research-on-bia-decision-making/ (outlining how the success rate of noncitizen appeals has plummeted since January 21, 2026).

[3] The Court also notes that Respondents fail to respond to Petitioner's evidence or allegations regarding the futility of an appeal to the BIA.

As to irreparable injury, Petitioner notes that, if he is required to exhaust his appeal with the BIA, he will suffer irreparable harm in the form of continued detention without a legally adequate opportunity to demonstrate his entitlement to bond. ECF No. 1, ¶ 18; ECF No. 6, at 8-9. Petitioner also speaks to his separation from his family—including his two minor children with serious medical needs. ECF No. 1-2, ¶ 20; ECF No. 1, ¶ 23. While Petitioner is the sole provider for his partner and youngest child—who requires complex medical care—Petitioner pays child support for his other three children as well. *Id.* ¶ 23. Petitioner asserts that he is harmed by his inability to work and provide for his family from detention. ECF No. 1, ¶ 23; ECF No. 1-2, ¶ 20.

Respondents argue only that continued detention after the denial of a bond hearing alone cannot constitute irreparable injury such that exhaustion should be waived. ECF No. 5, at 4 (citing *Reyes v. Wolf*, No. C-20-0377-JLR, 2021 WL 662659, at *3 (W.D. Wash. Feb. 19, 2021) *aff'd sub nom. Diaz Reyes v. Mayorkas*, No. 21-35142, 2021 WL 3082403 (9th Cir. July 21, 2021)). However, the Respondents fail to acknowledge that several courts—including those in this Circuit—have found that continued detention after a potentially legally inadequate hearing may constitute such irreparable harm. *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026) (finding irreparable injury where BIA review exceeded 200 days and "[d]istrict courts in this Circuit 'routinely' waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals." (quoting *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025)); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823, at *5 n.7 (E.D. Cal. Jan. 29, 2026) (holding petitioner satisfied irreparable injury *Laing* factor by "demonstrating the irreparable harm that would result from wrongful detention, which may result given the lengthy time it take to have an appeal decided."); *Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307, at *5 (E.D. Cal. Mar. 13, 2026) (adopting reasoning of *C.A.R.V.*); *Garcia v. Hyde*, No. 25-CV-585-JJM-PAS, --- F. Supp. 3d ---, 2025 WL 3466312, at *6 (D.R.I. Dec. 3, 2025) (finding irreparable injury in the form of continued detention where petitioner

26-cv-01759-GPC-DDL

would likely face several additional months of detention while awaiting BIA review); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019) (waiving exhaustion requirement where "delays inherent in the [BIA review] process ... would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings"); *Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *4 ("Moreover, given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim."). Thus, while continued detention alone may not constitute irreparable injury, the inherent delays in the current appeals process support a finding that Petitioner will suffer irreparable injury if he is required to wait for BIA adjudication of his bond denial.

Additionally, "Petitioner has presented evidence unique to him, that, while not an independent basis for relief, supports a finding that his continued detention pending a potentially months-long BIA appeal of the IJ's bond denial decision would risk continued irreparable harm." *W.T.M.*, 2026 WL 262583, at *3. The Ninth Circuit has acknowledged that "economic burdens imposed on detainees and their families as a result of detention" as well as "the collateral harms to children of detainees whose parents are detained" are relevant considerations in the irreparable harm analysis. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Accordingly, Petitioner's evidence regarding his two children with complex medical needs and his position as the sole economic provider for his partner and youngest daughter supports a finding of irreparable injury justifying a waiver of the exhaustion requirement. *See Malakhov v. Scott*, No. 2:26-CV-00646-JHC, 2026 WL 809881, at *3 (W.D. Wash. Mar. 24, 2026) (finding petitioner demonstrated irreparable harm through potential collateral harm faced by his children); *Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *4 (noting that petitioner had "dependents who rely on him financially and emotionally, and that relationship is severely negatively impacted by his continued detention" when determining that petitioner will suffer irreparable injury if required to exhaust his BIA appeal).

26-cv-01759-GPC-DDL

The combination of evidence in this case—including evidence that (1) the reconstituted BIA is unlikely to provide Petitioner with any efficacious relief, and (2) Petitioner would likely face lengthy continued detention while unable to provide for his family and care for his children with complex medical needs—suggest that waiver of exhaustion is appropriate. The Court thus exercises its discretion to waive the exhaustion requirement in this case.

### III. Sufficiency of Petitioner's Bond Hearing

Having found that Petitioner need not exhaust his administrative remedies, the Court now turns to the question of whether the bond hearing provided to Petitioner was legally and constitutionally adequate.

#### A. Legal Standard

"In light of *Martinez*, courts may review an IJ's finding that an alien poses a flight risk for abuse of discretion." *Zaitsev v. Warden of Adelanto ICE Processing Center*, No. 2:26-CV-00454-SPG-AS, 2026 WL 391429, at *10 (C.D. Cal. Feb. 9, 2026) (citing 124 F. 4th at 784). "'[A]buse of discretion' review does not involve 'reweigh[ing] evidence' but rather determining whether the IJ 'applied the correct legal standard.'" *Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307, at *5 (E.D. Cal. Mar. 13, 2026) (quoting *Martinez*, 124 F. 4th at 784) (alterations in original). Thus, "the Court must decide whether the IJ 'relied upon proof that—as a matter of law—could not establish'" the conclusion drawn. *Kharis v. Sessions*, No. 18-CV-04800-JST, 2018 WL 5809432, at *5 (N.D. Cal. Nov. 6, 2018) (quoting *Nguti v. Sessions*, No. 16-CV-6703, 2017 WL 5891328, at *3 (W.D.N.Y. Nov. 29, 2017)). The scope of this Court's review remains the same whether the government or petitioner bears the burden of proof. *Id.* Lastly, "the reviewing court must bear in mind that 'the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.'" *Loba L.M.*, 2026 WL 710307, at *5 (quoting *Hernandez*, 872 F.3d at 981).

Because the Court is tasked with determining whether the IJ applied the correct legal standard, the Court starts with identifying the legal standard at issue. At Petitioner's

1226(a) hearing, he bore the burden of showing by a preponderance of the evidence that he was not a danger to the community or a flight risk. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). "To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). An IJ "may" consider "any or all of the following":

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* (quoting *Guerra*, 24 I. & N. Dec. at 40). An IJ has "broad discretion" in weighing these factors, "as long as the decision is reasonable." *Guerra*, 24 I. & N. Dec. at 40. Indeed, an IJ may "consider any evidence in the record . . . when assessing flight risk, provided that such evidence is 'probative and specific.'" *Garcia*, --- F. Supp. 3d ---, 2025 WL 3466312, at *8 (quoting *Guerra*, 24 I. & N. Dec. at 40-41). Though what constitutes flight risk is "malleable and involves agency discretion," it is "still a legal standard so long as federal courts 'can assess whether an IJ correctly applied the statutory standard to a given set of facts.'" *Martinez*, 124 F. 4th at 783 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024).

## B. Petitioner's Bond Hearing Was Legally and Constitutionally Deficient

The Court concludes that the IJ abused her discretion when she denied Petitioner's bond request. Petitioner's undisputed account of the hearing indicates that the IJ considered only Petitioner's reliance on public assistance, driving without a license, and failure to pay taxes as evidence supporting a finding of flight risk. ECF No. 1, ¶ 30. The IJ did not

consider the "significant evidence showing Petitioner is fixed and stable with his family in his community," *see Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at \*5, or what this Court deems highly probative evidence regarding Petitioner's status as sole economic provider for his two-year-old daughter with complex medical needs. Respondents have not challenged Petitioner's account of the IJ's reasoning, nor offered any argument at all as to whether Petitioner's bond hearing passed legal or constitutional muster. *See* ECF No. 5.

There is no evidence that the IJ considered the *Guerra* factors or applied them to the set of facts before her. The record indicates that Petitioner has a fixed address in Escondido, California; has resided in the United States for 25 years; has four minor children who are U.S. citizens—two of whom require complex medical care; has been gainfully employed in the landscaping industry since he entered the United States; and has no criminal record. ECF No. 1-2, at 9. There is no evidence that Petitioner has ever attempted to flee prosecution or failed to appear in court. *Id.* None of the *Guerra* factors—nor any of Petitioner's evidence relating to those factors—were mentioned by the IJ when making her flight risk determination at the hearing or in her order. *See* ECF No. 1, ¶ 29; ECF No. 1-4, at 2.

The IJ's failure to consider or apply any of the *Guerra* factors and decision to instead rely on three pieces of evidence that "bear little if any relevance" to Petitioner's risk of flight, *see Matter of Patel*, 15 I. & N. Dec. 666, 666-67 (BIA 1976), while seemingly ignoring all evidence in Petitioner's favor constitutes a misapplication of the legal standard to the facts. Indeed, the IJ "relied upon proof that—as a matter of law—could not establish" that Petitioner was a flight risk. *Kharis*, 2018 WL 5809432, at \*5 (quoting *Nguti*, 2017 WL 5891328). *See also Lemus Crispin v. Bondi*, No. 1:26-CV-191 (LMB/WEF), 2026 WL 768859, at \*5 (E.D. Va. Mar. 18, 2026) (finding IJ relied on "three facts that do not pass constitutional muster" in holding that petitioner failed to show he is not a risk of flight"). Thus, the IJ's finding of flight risk "was an error of law and the denial of bond was inappropriate." *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008) (considering IJ's finding of present dangerousness). *Cf. Zhou v. Trump*, No. 25-CV-3503

JLS-DEB, 2026 WL 937125 (S.D. Cal. Apr. 7, 2026) (declining to find that bond hearing was legally inadequate when record indicated that IJ applied the *Guerra* factors).

The IJ's misapplication of the legal standard also bears on Petitioner's due process rights. "[D]ue process requires [an] IJ to consider the relevant evidence[.]" *Vilchez v. Holder*, 682 F.3d 1195, 1198 (9th Cir. 2012) (citing *Larita–Martinez v. I.N.S.,* 220 F.3d 1092, 1095 (9th Cir. 2000)). The Court notes that the IJ's order stated that it was made "[a]fter full consideration of the evidence presented[.]" ECF No. 1-4, at 2. In the absence of red flags, federal courts generally take immigration courts "at [their] word" regarding their consideration of evidence. *Martinez*, 124 F.4th at 785. *See also Cole v. Holder*, 659 F.3d 762 (9th Cir. 2011). Further, "[a]n IJ's failure to cite every piece of evidence in the record does not amount to clear error." *See Larita-Martinez v. INS,* 220 F.3d 1092, 1096 (9th Cir. 2000). However, when there is an indication that an IJ failed to actually consider all the evidence—such as if the IJ "fail[s] to mention highly probative of potentially dispositive evidence"—the Court will not credit an IJ's vague assertion. *Cole*, 659 F.3d at 771-72.

Here, the Court does not credit the IJ's vague assertion that she considered all the evidence, as the record before the Court indicates that the IJ failed to mention highly probative evidence. Such evidence includes the facts that (1) Petitioner has been in the United States for over 25 years, ECF No. 1, ¶ 25; (2) Petitioner has four minor children who are U.S. citizens, two of whom have serious medical needs and one of whom—with such medical needs—relies on Petitioner as her sole financial provider, ECF No. 1, ¶ 23; and (3) Petitioner's U.S. citizen sister has agreed to be his financial sponsor, produced evidence that she has the means to do so, and swore under penalty of perjury that she would ensure Petitioner's presence at any future court dates, ECF No. 1, ¶ 28. Per Petitioner's account of the hearing—which Respondents do not dispute—the IJ declined to consider any of the above in her flight risk determination. Thus, the IJ failed to consider all relevant evidence as required by due process. *See Vilchez*, 682 F.3d at 1198. *See also Soriano*, ---

26-cv-01759-GPC-DDL

F. Supp. 3d. ---, 2026 WL 969764, at *4-*6 (finding IJ's abuse of discretion in denying bond rendered petitioner's bond hearing constitutionally deficient.).

## IV.   Relief Due

Having determined that Petitioner's bond hearing was legally and constitutionally inadequate, the Court considers what relief Petitioner is due. Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Upon determining that an IJ provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release—*see Soriano*, --- F. Supp. 3d. ---, 2026 WL 969764, at *6; *W.T.M.*, 2026 WL 22583, at *5; *Miri*, 2026 WL 622302, at *11; *Garcia*, --- F. Supp. 3d ---, 2025 WL 3466312, at *11—or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing—*see Kharis*, 2018 WL 5809432, at *11; *Lemus Crispin*, 2026 WL 768859, at *7; *S.E. v. Noem*, No. 1:26-CV-00356-DAD-SCR, 2026 WL 836327 (E.D. Cal. Mar. 26, 2026); *N.A.*, 2026 WL 734587, at *9.

Under these circumstances, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano*, --- F. Supp. 3d. ---, 2026 WL 969764, at *6.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the petition and ORDERS as follows:

1. Respondents are ORDERED to release Petitioner from custody (and return to him his personal belongings) within forty-eight (48) hours under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5. Respondents may not redetain Petitioner without compliance with 8 C.F.R. § 241.4(l)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231.

2. Respondents are enjoined from relocating Petitioner outside of the Southern District of California pending final resolution of this matter.

3. Within forty-eight (48) hours of this order, Respondents SHALL file with the Court a declaration confirming Petitioner has been released from custody and a copy of the conditions of supervision.

26-cv-01759-GPC-DDL

4. Petitioner's request for an award of costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act is DENIED without prejudice. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order.

IT IS SO ORDERED.

Dated:  April 16, 2026

Hon. Gonzalo P. Curiel
United States District Judge

26-cv-01759-GPC-DDL